IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| : | Criminal No. 1:08-CR-170 |
| v. : | |
| : | (Chief Judge Kane) |
| DAVID DUPREE, : | |
| : | |
| **Defendant** : | |

**MEMORANDUM**

Before the Court is Defendant David Dupree's ("Dupree") motion for judgment of acquittal or, in the alternative, a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Doc. No. 210.) This motion is fully briefed and is ripe for disposition. For the reasons that follow, the Court will deny the motion.

**I.  BACKGROUND**

**A.  Procedural Background**

On April 23, 2008, a three-count indictment was filed charging Ronald Samuels, David Dupree, Latricia Samuels, and Mayra Rodriguez with armed bank robbery (Count I), use of a firearm during the bank robbery (Count II), and conspiracy to commit and aid and abet in the commission of those offenses (Count III). (Doc. No. 1.) Dupree's co-defendants all pleaded guilty after entering into plea agreements with the Government. After a three-day trial the jury rendered a verdict on November 4, 2009, finding Dupree guilty on all counts. On November 27, 2009, Dupree timely[1] filed the present motion for judgment of acquittal or new trial.

---

[1] The Government has asserted that this motion is untimely because the jury returned a verdict on November 4, 2009, and post-trial motions for judgment of acquittal and new trial must be filed within seven days of the jury verdict. (Doc. No. 211 at 3.) This argument must be rejected, however, considering Dupree's timely, concurred-in, request for a 15-day extension of time to file post-trial motions (Doc. No. 203), which was granted by the Court (Doc. No. 204).

### B. Factual Background

The testimony taken at trial focused on the armed bank robbery of the M&T Bank in Lebanon, Pennsylvania. The evidence, including pictures from the bank surveillance cameras, showed that two armed men entered the bank at about 10:00 a.m. on April 15, 2004. Tammy Waltermeyer, the teller on duty that morning, testified that a young African-American woman, who was later identified as Latricia Samuels, came into the bank early that morning and asked her for mortgage information. (Trial Tr. at 33.) She then noticed a vehicle back into the bank's parking lot with out-of-state tags. (Id. at 34.) She testified that shortly thereafter two men entered the bank and robbed it at gunpoint. (Id.)

Ms. Waltermeyer testified that one of the robbers, an African-American male wearing a yellow poncho and sunglasses, jumped over the counter, put a gun to her head, and demanded she open all of the cash drawers. (Id. at 34-37.) She described the gun he carried as a silver semiautomatic and testified that she had no doubt it was real based on her experience with guns. (Id. at 39-40.) The sunglasses he wore fell off when he jumped over the counter and were left at the scene. (Id. at 37-38.)

The second robber who came into the bank approached Mary Rodriguez, the teller stationed at the drive-up window. (Id. at 52; 57.) He pointed his silver, square-shaped gun at her head and forced her to turn over the money in her drawer. (Id. at 57-58.) While she was handing over the money, he stated "that's what I'm talking about." (Id.) He then returned to the lobby of the bank and warned both tellers that "all it takes is one shot." (Id.) Ms. Rodriguez testified that this robber was a male wearing dark pants and boots, surgical gloves duct taped to his wrist, a jacket, sunglasses, and a covering over his face. (Id. at 56-58.) The branch manager, Penny

2

Mitchell, described him similarly, adding that she could tell from uncovered parts of his face that he was African American and believed from his voice and movements that he was between 25 and 30 years old. (Id. at 65-66.)

Because the two men who robbed the M&T Bank masked their faces, the tellers were not able to affirmatively identify the robbers and the bank surveillance cameras did not get any unobstructed facial pictures. Despite this, evidence introduced at trial showed that the robbers were Defendants Dupree and Ronald Samuels. DNA extracted from the dropped sunglasses left at the scene revealed that they were worn by Ronald Samuels. (Id. at 176; 253-55.) Dupree was identified by his coconspirators Latricia Samuels and Mayra Rodriguez. (Id. at 120-21; 205-206.)

## II. DISCUSSION

Dupree has challenged the jury's verdict on all counts of his conviction. The Court will address his arguments in turn.

### A. Motion for Judgement of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure provides that a court may enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. See Fed. R. Crim. P. 29. A defendant faces a heavy burden of demonstrating that the evidence adduced at trial was insufficient as a matter of law. United States v. Rosario, 118 F.3d 160, 163 (3d Cir. 1997). The Court's review of the evidence must be guided by deference to a jury's verdict. Id. Accordingly, a defendant's conviction will be sustained if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Cuevas-

3

Reyes, 572 F.3d 119, 121 (3d Cir. 2009) (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)). In making this determination, the Court does not weigh evidence or determine the credibility of witnesses. United States v. Beckett, 208 F.3d 140, 151 (3d Cir. 2000). The Court will therefore overturn the verdict "'only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt.'" United States v. Mussare, 405 F.3d 161, 166 (3d Cir. 2005) (quoting United States v. Anderson, 108 F.3d 478, 481 (3d Cir. 1997)).

### 1. Armed Bank Robbery

In the first count of conviction, the jury found Dupree guilty of armed bank robbery under 18 U.S.C. § 2113(a) and (d). (Doc. No. 201.) "The crime of bank robbery occurs when a person obtains or attempts to obtain money or valuables from a federally insured bank 'by force and violence, or by intimidation.'" United States v. Wolfe, 245 F.3d 257, 261-62 (3d Cir. 2001) (quoting 18 U.S.C. § 2113(a)). Armed bank robbery is a more serious offense, which occurs when a person committing a bank robbery "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device . . . ." 18 U.S.C. § 2113(d). Accordingly, the Government had to prove four elements to establish that Dupree had committed the crime of armed bank robbery: (1) Dupree took money that was in the care, custody, or possession of the M&T Bank, (2) using force, violence, or intimidation, (3) putting the lives of bank employees in jeopardy by use of a dangerous weapon or device while taking the money, and (4) that the deposits of M&T Bank were federally insured. See Wolfe, 254 F.3d at 261-62.

Dupree argues "the government failed to prove the elements of the offense because they failed to prove that he was the individual involved in the robbery." (Doc. No. 212 at 7.) In

4

support of this contention, Dupree asserts that the only evidence connecting him to the robbery was testimony from coconspirators Latricia Samuels and Mayra Rodriguez. (Id.) He further contends that "the versions of events elicited from Samuels and Rodriguez were so widely inconsistent, and so unpersuasive, that no rational trier of fact could find their testimony to be worthy of belief beyond a reasonable doubt." (Id.)

There was sufficient evidence for the jury to find that Dupree was the second man who participated in the robbery at the M&T Bank. Testimony from his coconspirators Mayra Rodriguez and Latricia Samuels sufficiently identified Dupree and tied him to the crime. From their testimony, it is clear that Mayra and Latricia's role was to scout the bank beforehand and then drive the getaway vehicle after the robbery had taken place. The night before the incident, Mayra testified that she, Ronald Samuels, and Dupree picked out the M&T Bank as their target and were formulating the specifics of their plan for the robbery. (Trial Tr. at 100-01.) The next morning, Mayra met Latricia and they drove together in Latricia's vehicle from Camden, New Jersey to the M&T Bank in Lebanon, Pennsylvania. (Id. at 106; 183-184.) When they arrived, Ronald Samuels instructed Latricia over the phone to go into the bank and determine how many employees and customers were inside. (Id. at 184.) After Latricia had reported back, Mayra drove them to a nearby alleyway and parked the car. (Id. at 187-88.) Latricia testified that a short time after they had parked, she saw a car quickly pass the alleyway and then screech to a stop. (Id. at 190-91.) Latricia then saw Ronald Samuels and Dupree run up the alleyway with black bags in their hands and jumped into her car. (Id. at 192.) Ronald Samuels and Dupree were out of breath and exhausted as they approached and instructed Mayra to "go, go, go" after they climbed into the vehicle. (Id. at 194-95.) Both Latricia and Mayra testified that Dupree

5

was wearing the same articles of clothing when he got into the car as the second robber in the bank surveillance photos. (Id. 111; 205.) They were both specifically familiar with the robber's jacket because they had seen Dupree wear that same jacket on several prior occasions. (Id. at 111; 207) Though they did not directly see Dupree enter the bank and commit the robbery that day, both Mayra and Latricia testified that they had no doubt the second robber shown in the bank surveillance photos was Dupree based on his clothing and stature. (Id. at 121; 206.) After the group had returned to Camden, they all went into Ronald Samuel's bedroom, where the money was dumped out of the bags and split up between them. (Id. at 116; 197-98.) Dupree took a share of the money. (Id. at 116; 199.) The group then went to Atlantic City to exchange the stolen money for clean bills. (Id. at 117; 199.)

Considering this evidence in the light most favorable to the Government, the Court will reject Dupree's arguments. His identity is clearly shown by consistent testimony from Latricia and Mayra identifying him as the robber wearing the jacket in the bank surveillance photos. Their testimony also showed that Dupree fled the scene and split the proceeds from the robbery with Ronald Samuels, who was shown to be the robber wearing a yellow poncho in the bank surveillance photos. Dupree's actions with Ronald Samuels that day therefore circumstantially show that he was a participant in the robbery. Accordingly, it is clear there was ample evidence in the record for the jury to find that Dupree robbed the M&T Bank. Though Dupree has not challenged any of the other elements of the armed bank robbery offense, the Court finds that there was sufficient evidence on each for a rational jury to find Dupree guilty. As such, Dupree's conviction for armed bank robbery will be sustained.

### 2. Using a Firearm During a Crime of Violence

In the second count of conviction, the jury found Dupree guilty of using a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). (Doc. No. 201.) Section 924(c) provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime - [be sentenced to a certain number of years depending on the facts of the crime]....

United States v. Williams, 344 F.3d 365, 370 (3d Cir. 2003) (quoting 18 U.S.C. § 924(c)(1)(A)). Accordingly, the essential elements of this crime are: (1) Dupree committed the crime of armed bank robbery, and (2) that during and in relation to the commission of that crime, David Dupree knowingly used a firearm. 18 U.S.C. § 924(c)(1)(A). For purposes of this statute, firearm is defined, in pertinent part, as any weapon which will expel, or is designed to or may readily be converted to expel, a projectile by the action of an explosive. 18 U.S.C. § 921(a)(3). The term includes the frame or receiver of any such weapon. Id.

In addition to his arguments raised in opposition to the jury's verdict on the first count of conviction, Dupree argues that there was insufficient proof to show that the item used by Dupree during commission of the robbery was a firearm. (Doc. No. 212 at 9.) In support of this contention, Dupree points out that there was no expert testimony presented at trial to establish that the weapon used could expel a projectile. (Id.) He claims the testimony by the lay witness bank tellers and coconspirators was insufficient to establish that the weapon was a firearm. (Id.)

The circumstances in this case are similar to those in United States v. Beverly, 99 F.3d 570 (3d Cir. 1996), in which the Third Circuit affirmed a conviction under § 924(c). In Beverly,

7

"the only evidence presented with respect to the firearms charge was the testimony of McCullough that Beverly threatened him with a gun during the course of the robbery, and that the gun, which was displayed in the car, was a chrome-plated revolver." Id. at 572. In denying the defendant's argument that this testimony was insufficient to prove the weapon was a firearm, the court partially relied on Parker v. United States, 801 F.2d 1382, 1383 (D.C. Cir. 1986), where the D.C. Circuit had held "non-expert testimony that a robber used a gun was enough to justify a conviction under § 924(c) . . ." even where the gun was not recovered and there was no evidence that the gun was fired, Beverly, 99 F.3d at 572. The court noted specifically that it was unlikely the witness mistook the authenticity of the weapon because he had seen the gun in close proximity while it was brandished. Id. at 573. The court also noted that the defendant had threatened the witness's life with the gun several times during the course of the robbery, which was "'tantamount to saying that the gun is loaded and that the gun wielder will shoot unless his commands are obeyed.'" Id. (quoting Parker, 801 F.2d at 1384).

Bank employee Mary Rodriguez testified that Dupree had a gun during the robbery which she could tell was metal and not plastic. (Trial Tr. at 58.) He held the gun sideways to her face when he demanded she turn over the money in her drawer. (Id. at 57.) He then returned to the lobby of the bank and warned the bank employees that "all it takes is one shot." (Id.) The branch manager, who was in her office about eight feet away from the lobby at the time of the robbery, corroborated Ms. Rodriguez's testimony about the gun being silver and metal. (Id. at 66.) She added that she could see a hole in the barrel of the gun that was not plugged, and believed it was somewhat heavy from the way Dupree carried it. (Id. at 67.)

It is clear from this summary that there was sufficient evidence for a rational jury to

8

conclude that the weapon used by Dupree in robbing the bank was real and met the definition of a firearm under 18 U.S.C. § 921(a)(3). While not exhaustive, Ms. Rodriguez described the weapon consistently with the definition of a firearm. As in Beverly, it is unlikely she would have mistaken it for a fake at such close range because Dupree held the weapon directly in her face while she was removing money from her drawer and handing it over to him. Dupree also threatened her during the robbery when he said "it only takes one shot," indicating that the gun was loaded and capable of firing. Ms. Mitchell corroborated Ms. Rodriguez's testimony about the characteristics and authenticity of the gun. Accordingly, considering the evidence in the light most favorable to the Government, the Court will deny Dupree's motion for judgment of acquittal on this count of conviction.

### 3. Conspiracy

In the third count of conviction, the jury found Dupree guilty of conspiracy to commit the offenses of armed bank robbery, using a firearm during a crime of violence, and aiding and abetting armed bank robbery in violation of 18 U.S.C. § 371. To establish the conspiracy, the Government had to prove four essential elements: (1) the existence of an agreement to commit offenses against the United States, (2) that Dupree was a party or member of the agreement, (3) that Dupree and another conspirator shared the intent to achieve a common goal or objective to commit the stated offenses against the United States, and (4) that one of the conspirators committed an overt act in furtherance of the conspiracy. See e.g., United States v. Rankin, 870 F.2d 109, 113-14 (3d Cir. 1989).

In support of overturning this conviction, Dupree merely incorporates the same arguments he raised in support of overturning the first two counts of conviction discussed above.

9

(Doc. No. 212 at 9-10.) To the extent they are applicable, those arguments will also be rejected with regard to his conspiracy conviction. Mayra Rodriguez and Latricia Samuel's testimony clearly provided sufficient evidence to sustain the jury's verdict. Mayra testified that she met with Dupree and Ronald Samuels the night of April 14, 2004. (Trial Tr. 105.) During that meeting, they discussed robbing the M&T Bank in Lebanon. (Id. at 100-102.) Ronald Samuels was also informing Dupree about the details of the plan, which the conspirators referred to as the "one-two." (Id.) The following day all four conspirators traveled from New Jersey to Lebanon, Pennsylvania. (Id. at 106.) Latricia Samuels testified that it was understood they were traveling to Lebanon to rob the M&T Bank. (Id. at 189.) When they arrived, they executed a clearly well-orchestrated and sophisticated plan, which included sending in Latricia to scout the bank beforehand and a two-car getaway. Considering this evidence in the light most favorable to the Government, there was sufficient evidence for the jury to find Dupree guilty of this offense; the conviction will be sustained.

### B. New Trial

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the Defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The decision to grant or deny a motion for a new trial lies within the discretion of the district court. United States v. Vitillo, 490 F.3d 314, 325 (3d Cir. 2007) (citing United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006)). One ground on which a new trial may be granted is if the jury's verdict is contrary to the weight of the evidence such that the Court believes "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir.

2002) (quoting United States v. Morales, 902 F.2d 604, 606 (7th Cir. 1990)). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." Id. Motions for a new trial based on weight of the evidence are not favored, so they should "be granted sparingly and only in exceptional cases." United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003).

Relying on essentially the same arguments as he did in support of his motion for judgment of acquittal, Dupree asserts that this is an exceptional case and that the Court should grant him a new trial in the interest of justice. (See Doc. No. 212 at 6-10.) He especially focuses, as he did at trial, on the credibility of his coconspirators Latricia Samuels and Mayra Rodriguez. (Id. at 7.)

The Court will reject Dupree's arguments. Having independently assessed the evidence presented at trial, the Court cannot find that a new trial is warranted in this case in the interest of justice. Indeed, the volume and weight of the evidence, including the testimony recounted extensively above, leads the Court to the conclusion that the jury's verdict was supported by the weight of the evidence on all counts of conviction. Though there were some inconsistencies in the testimony of Mayra Rodriguez and Latricia Samuels, the Court finds that they were relatively minor, especially considering the length of time that had passed between the robbery and their testimony. On the whole, they presented a credible recounting of the conspirators' preparation and execution of the robbery. They also persuasively identified Dupree as one of the armed robbers in the bank surveillance photos and explained his role in the offense. Accordingly, Dupree's motion for a new trial will be denied.

**III.    CONCLUSION**

For the foregoing reasons, Dupree's motion for judgment of acquittal or, in the alternative, a new trial (Doc. No. 210) will be denied. An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| : | Criminal No. 1:08-CR-170 |
| v. : | |
| : | (Chief Judge Kane) |
| DAVID DUPREE, : | |
| : | |
| Defendant : | |

## ORDER

**AND NOW**, on this 18th day of May 2010, upon consideration of Defendant David Dupree's motion for judgment of acquittal or, in the alternative, a new trial (Doc. No. 210), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motion is **DENIED**.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania